## LAMB VS. KLAUS.

### *Usage—Evidence—Interest.*

1. In actions upon express contracts, proof of *usage* is admitted on the ground that it serves to explain and ascertain the intent of the parties upon some point as to which their contract is silent.

2. The usage shown should be so long continued and well known and settled, and uniformly acted upon, as to raise a presumption that it was known to both contracting parties, and that their contract was made with reference to it.

3. It is not necessary, however, to show *how long* a usage has continued, if it is otherwise shown to have been known to the parties and their contract made with reference to it.

4. Where there is a written contract to manufacture and deliver goods, and money is advanced thereon, a usage to pay interest on such advances at ten per cent. is not contrary to the terms of the written contract, although nothing is said of the interest therein.

5. It is error in such case to exclude evidence tending to prove that at the time and place where the contract was made and executed, it was the custom and usage to allow interest on cash advances on such contracts, and that such usage was generally known and was known to the parties and contemplated by them at the time of the agreement.

5. Where the party who made the advances claimed by his pleading that there was a *mistake* in the written contract, and that the obligation to pay interest at ten per cent. should have been *expressed* therein, and asked to have the instrument reformed, and this equitable issue was first tried and determined against him, the court adjudging that the written contract "expressed fully the *intentions* of the parties, and was the real contract between them:" *Held*, that this must be construed to mean merely that the written contract expresses all that the parties *meant to express therein*; and it does not estop either party from proving a usage which entered into the agreement.

6. A usage to pay *ten* per cent. interest on advances is like any other *unwritten* promise to pay that rate, and is good to enforce payment of interest at seven per cent., the rate allowed by law where there is an obligation to pay interest and no written agreement for a higher rate.

APPEAL from the Circuit Court for *Brown* County.

The plaintiff, *Lamb*, brought his action to recover the price of shingles sold and delivered under a written agreement with

the defendant. The answer set up as a counterclaim a mistake in the execution of the agreement, whereby a stipulation that defendant was to receive ten per cent. interest on all advances made on the contract until repaid, was omitted, and asked that the agreement might be reformed in this respect. The issue upon this counterclaim was previously tried and determined against defendant, and is not embraced in the issues from which the appeal is taken. The answer further alleged that defendant had made advances on the contract and claimed interest on these advances at the rate of ten per cent., on the ground that such interest was included in defendant's monthly statements to plaintiff, which had been assented to by him and thus became accounts stated. Defendant also claimed interest on the ground of a general usage in that locality and the existence of a general rule that interest is recoverable on advances. The right to the interest was the principal point in issue.

Upon the trial defendant offered to prove that before and at the time of the making of the agreement in question, it was the custom and usage among lumbermen of Green Bay and Brown county, where the parties resided, and where the contract was made and executed, to allow interest on all cash advances made on contracts like the one set forth in plaintiff's complaint, and that that custom was generally known and known to the plaintiff; also that such custom was contemplated by the parties at the time the agreement was made. Plaintiff objected to any evidence of such usage, and the court excluded the testimony. Verdict for plaintiff and judgment accordingly, from which defendant appealed.

*Hastings & Greene*, for appellant, contended that interest might be recovered where there is a general custom, or the custom of a particular place, to allow it. Such custom being established, the parties are presumed to have contracted with reference thereto, and it enters into and becomes a part of the contract. *Esterly v. Cole*, 3 Comstock, 502; *Koons v. Miller*, 3 Watts & Serg., 217; *Watt v. Hoch*, 25 Pa. St., 411; 3 Pars.

Cont. (5th ed.) 102.   Custom may be thus proved to add terms to a written contract where it is silent.  *Boorman v. Jenkins*, 12 Wend., 566; *Hutton v. Warren*, 1 M. & W., 466.   The statute authorizing parties to contract for payment of interest at the rate of ten per cent., requires this rate " to be clearly expressed in writing."   The question is thus presented :   Can a usage be received to show a promise which the statute requires to be in writing?   It is admitted that a usage cannot authorize the taking of a usurious rate of interest (13 Johns. R., 44.)   When, however, a contract for a certain rate of interest is lawful, but the evidence of it is required by statute to be in writing, the establishment of an implied promise to pay that rate by usage is not opposed to the policy of the statute.   The usage as to the parties is the *law*.   When established clearly and without contradiction, the evidence is as satisfactory and certain as written evidence can be.   When the law thus implies a promise from the acts, conduct or situation of parties, it is not within statutes requiring written evidence of contract.   *Goodwin v. Gilbert*, 9 Mass., 510; *Jackson v. Matsdorf*, 11 Johns., 91; *Smith v. Bradley*, 2 Root, Conn., 148.   Even if a promise to pay ten per cent. interest cannot properly be established by usage, it is competent to show a liability at seven per cent.   Under allegations of a prescriptive or customary right, evidence is admissible to establish the right to a lesser extent than alleged, if it be of the same nature and included within the one alleged.

*Neville & Tracy*, for respondent, argued that the usage was contrary to law, being a usage to charge ten per cent. interest without a written agreement.   Laws of 1866, chap. 120.   To the point that the usage itself was void, counsel cited *Frith v. Barker*, 2 Johns., 327; *Dunham v. Gould*, 16 Johns., 367; *Woodruff v. Merchants' Bank*, 25 Wend., 673; *Bowen v. Newell*, 8 N. Y., 190; *Foye v. Leighton*, 2 Fost., N. H., 71; *McLaughton v. Swinne*, 13 La. An., 94; *Greene v. Tyler*, 39 Pa. St., 361. The court found upon the trial of the equity issue that "the contract fully expressed the intentions of the parties and is the

real contract between them." The judgment follows the finding, but that which the court had expressly adjudged should not be done, the defendant sought to do by evidence of usage. On this point the former adjudication was a bar. *Bouchand v. Dias*, 3 Denio, 238, 243; *Lawrence v. Hunt*, 10 Wend., 81, 85; *Gardner v. Buckbee*, 3 Cow., 120; *Doty v. Brown*, 4 N. Y., 71; *White v. Coatsworth*, 2 Selden, 137, 143; *Demarest v. Darg*, 32 N. Y., 281, 291.

DIXON, C. J. The rules of the common law respecting the validity of usages and their effect and the admissibility of evidence to show them for the purpose of annexing certain customary incidents and qualifications to the contracts of parties, have been long established and are well understood. These rules are fully exemplified by the numerous authorities cited by counsel on both sides in this case, and the general principle on which they rest and the limitations which are placed to the application of that principle are stated very concisely and correctly by the court in *Foye v. Leighton*, 2 Foster, 75. The court say: A usage explains and ascertains the intent of the parties. It cannot be in opposition to any principle of general policy, nor inconsistent with the terms of the agreement between the parties; for it incorporates itself into the terms of the agreement and becomes a part of it. It must be known and established. It must appear to be so well settled, so uniformly acted upon, and of so long a continuance, as to raise a fair presumption that it was known to both contracting parties, and that they contracted in reference to it and in conformity with it.

The principle upon which proof of usage is admitted is, therefore, that it serves to explain and ascertain the intent of the parties upon some point as to which their contract is silent, and as to which there existed a usage, so long continued and well known and settled and uniformly acted upon, as to raise a fair presumption that it was known to both

contracting parties, that they contracted with reference to and in conformity with it, and hence the silence or omission of any express provision in the contract itself. The presumption in such case is that the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but to make a contract in reference to the known usage. This interpretation of written contracts by proof of and with reference to usages and the engrafting upon such contracts, of conditions and stipulations not found in or expressed by them, has been said, and no doubt truly, to constitute an exception to the general rule, that an instrument, complete on its face in all its parts, and importing to be the exclusive expositor of the sense of the parties, shall not receive additions from parol evidence. A most notable instance of this is that wherein by the law merchant, founded merely in commercial usage and convenience, days of grace are added and the time extended for the payment of a bill of exchange or promissory note beyond that specified in the instrument itself, so that, though drawn and on its face payable, for example, in sixty days, yet the money does not become due nor can payment be demanded until the expiration of sixty-three days. The usage steps in, which in that case has the force of law, and the contract is construed as an agreement to pay only at the expiration of sixty-three days. That is an extreme case of the application of the doctrine of usage in the interpretation of written contracts, where the usage is permitted to prevail over the very terms of the contract and is in direct contradiction of them, and no doubt constitutes an exception, and probably the only one, to the general rule, that usage to be admissible must not be inconsistent with the express language of the instrument. And an examination of the authorities will show that it is not in cases alone where the incidents to be annexed to the contract by usage are in conflict with the express language of the instrument, that the usage is excluded, but that it is also excluded where the provisions of the contract are such as reasonably and fairly to imply some different agree-

ment or intention as between the contracting parties. And an examination of the authorities will also show that the chief difficulty in the application of the doctrine of usage in the interpretation of written contracts has, in many cases, arisen from the difficulty of determining when the usage is, and when it is not, to be regarded as excluded by the terms express or implied, of the contract.

In the case at bar we are relieved from any difficulty in determining whether the usage relied upon by defendant is excluded by the terms, express or implied, of the written contract, and also whether it is a valid usage. The usage is not inconsistent 'with any of the conditions or stipulations of the contract, nor does it contravene any principle of general policy. It is a usage to allow interest at the rate of ten per cent. per annum upon all moneys advanced under such contracts until the property, or goods bargained for shall be manufactured and delivered. An agreement to pay interest at the rate of ten per cent. upon a loan or advance of money is not unlawful, but the promise is valid and will be enforced provided it be evidenced by writing. The answer here avers such usage and seeks to annex a promise to pay interest at that rate, on advances as an incident to the contract, or as, by tacit agreement and understanding of the parties with reference to the usage, incorporated into and forming a part of the contract. The offer of proof under the answer, and which was objected to by the plaintiff and rejected by the court, was, "that before and at the time of making the agreement in question, it was the custom and usage among lumbermen of Green Bay and Brown county to allow interest on all cash advances made on contracts like the one set forth in the plaintiff's complaint, and that that custom and usage was generally known, and known to the plaintiff also, that such custom was contemplated by the parties at the time the agreement was made." The contract was made and to be performed at and near Green Bay, within the county of Brown, where both the parties resided and the proof thus

offered was, we think, sufficiently comprehensive to bring the case within the doctrine of the law on the subject of usage, unless there exist, as is contended for the plaintiff, some peculiar reasons for excluding its operation as to this contract or the class of contracts to which this belongs. The offer was in all respects sufficient, unless it might possibly be said to be defective in not showing how long the custom had continued, but that was immaterial, since it appears by the other facts proposed to be proved that it was well established and generally known at the time the contract was entered into, and that the parties knew of and executed the contract in contemplation of it.

One of the peculiar reasons urged for excluding the usage and holding that it has no operation upon this contract is, that upon the equitable issue raised by the answer, in which the defendant alleged there was a mistake in the contract and that it should have been expressed in writing in it that the plaintiff was to pay interest at the rate of ten per cent. on all advances made to him by the defendant and asked to have the contract so reformed, and which issue was first tried and determined, the court found and adjudged that there was no such mistake and that the contract did "express fully the intentions of the parties thereto, and was the real contract between them." It is contended that, as the court adjudged that the contract *fully* expressed the intention of the parties, nothing can be added to it by proof of usage, and that the judgment operates in the way of estoppel upon the defendant to preclude any such proof. Upon the supposition and as we find the law to be, that a usage incorporates itself into the terms of the agreement and becomes a part of it, so that what is embraced in the usage is not expressed in the agreement nor required nor intended to be, it is not easy to see how a judgment declaring that the agreement fully expresses all that the parties intended to express by it (for such must be the construction of the finding) can in any way estop either party or deprive him of the right to show the existence and application of such usage. Indeed it seems very

Lamb vs. Klaus.

plain, viewing usages as they are viewed by the law and as it is presumed the parties viewed and understood them at the time the agreement was made, that such cannot be the effect of the judgment.

The other special reason urged against the proof of usage in this case, is that it is a usage to pay ten per cent. interest instead of seven per cent. interest on advances made upon contracts of the class to which this belongs, whereas by law only the latter and not the former rate of interest can be recovered without a promise in writing for its payment. That the usage is not good to enforce payment of interest at the rate of ten per cent. seems very certain. The usage is unwritten, and, being so, is no better than any other unwritten promise for the payment of interest at that rate or any rate above seven per cent. If the borrower of money should promise the lender by parol to pay him ten per cent. interest on the sum loaned, such promise would be invalid or not enforcable in law because not in writing. Should the lender sue the borrower, setting up the promise as made and averring non-payment, would he be precluded from recovering against the borrower any interest on the money loaned? The promise to pay the interest at ten per cent. was not unlawful, but only the evidence of it required by law to make it effectual, was wanting. The intention of the lender to require and of the borrower to pay interest would be clear, and in that case no doubt could exist that the law would give interest at the rate of seven per cent., that being the highest rate at which an oral promise of payment is valid, and the rate fixed and implied by law in the absence of any special agreement for a different one. How does an oral promise to pay interest at ten per cent., shown by usage, differ from such an one? It seems to us that on principle no distinction can be made and that all merely verbal promises must stand on the same footing and be treated alike. We are of opinion, therefore, that the usage, if established according to the offer of proof which was made, will be good to enable the defendant to recover seven per cent.

interest on his advances for which a demand of interest at the rate of ten per cent. is made in the answer.

As the judgment must be reversed for the error in excluding the evidence thus offered, we have not particularly considered the other exceptions presented by the record, and it becomes unnecessary finally to pass upon them. We may say, however, for the benefit of counsel, that in the slight attention we have been able to give to them, we have failed to discover anything in the other grounds of defense or positions taken by counsel for the defendant upon which we would recommend another appeal by the defendant to this court.

*By the Court.* — Judgment reversed and a *venire de novo* awarded.