WAUSAU BOOM COMPANY, Respondent, vs. DUNBAR, Appellant.

75    133
61 LRA 557n

*October 22 — November 5, 1889.*

*(1) Practice: Right to open and close.  (2) Logs and logging: Booms: Custom: Evidence.*

1. Although the plaintiff's cause of action is confessed, yet if under the pleadings the amount of his damages remains in issue, he has the affirmative and is entitled to open and close to the jury.

2. In an action to recover boomage charges the defendant counterclaimed for the failure to deliver some of his logs at his mill. The plaintiff was not bound by specific contract to so deliver all of the defendant's logs or pay therefor, but was bound only to use reasonable care and diligence in that respect; and it was alleged that the logs in question became misplaced and were passed below the defendant's mill without fault of the plaintiff, and that, in accordance with the established custom in such cases, the logs were delivered to other mills which gave credit to the defendant therefor. *Held*, that evidence of such custom was admissible.

APPEAL from the Circuit Court for *Marathon* County. The following statement of the case was prepared by Mr. Justice CASSODAY:

This action was commenced April 10, 1886, to recover boomage charges on certain logs of the defendant by the plaintiff in its booms on the Wisconsin river at Wausau. The complaint, among other things, alleges, in effect, that October 1, 1882, and during all the time hereinafter mentioned, the defendant was the owner of and operated a saw-

mill in Wausau, adjacent to the plaintiff's said boom; that on and prior to said date he was the owner of a quantity of saw-logs and round timber, described, then lying above said boom on or in said river or the tributaries thereof; that neither at that time nor at any time thereafter could any part of the same be delivered at said mill without first being received in the plaintiff's said boom and therein stored, sorted, and divided by the plaintiff,— all of which facts have at all times been well known to the defendant; that the defendant also well knew that the plaintiff was entitled to receive payment for its services for all logs and timber stored, sorted, and divided by it in said boom, at the rate of fifty cents per 1,000 feet, board measure; that between October 1, 1882, and November 11, 1882, the plaintiff received 281,807 feet, board measure, of logs belonging to the defendant in said boom, and therein stored, sorted, and divided the same for the defendant, for which it was entitled to $140.90; that no part thereof has been paid, except $100, June 16, 1883; and claims a balance thereon of $40.90, with interest.

For a separate and second cause of action, the complaint, among other things, alleges that between April 1, 1884, and December 10, 1884, the plaintiff received in its boom 4,717,705 feet of logs and timber, described, and therein stored, sorted, and divided the same for the defendant, and was entitled therefor to $2,358.85; that no part thereof has been paid, except $2,047.26, being the aggregate amount of the several sums stated, leaving a balance of $311.60.

The defendant, answering said first cause of action, denies that plaintiff received and stored the amount of logs stated in the complaint, and alleges that he paid the plaintiff, prior to the commencement of this action, in full for all logs handled or stored by it for him during the year 1882; and for a separate defense to the second cause of action alleged in the complaint, and by way of counterclaim, the defend-

ant alleges, in effect, that during the year 1884, upon the defendant's request, the plaintiff received 4,717,705 feet of the defendant's logs into its boom, and undertook to and did store said logs, and undertook to sort and deliver the same at the defendant's mill, for which the defendant agreed to pay fifty cents for each and every thousand feet so stored, assorted, and delivered at his said mill; that the plaintiff, disregarding its obligations to assort and deliver at the defendant's mill, so carelessly and negligently handled and assorted the 4,717,705 feet mentioned in the complaint that a large quantity of the same never reached the defendant's said mill, and that, through the carelessness, negligence, and mismanagement of the plaintiff, 38,950 feet thereof were never delivered to defendant's mill, but were wholly lost to the defendant, whereby he suffered damages in the sum of $311.60; that through the carelessness and negligence of the plaintiff in handling other of said logs, 26,990 feet of the same were turned into the boom of the Alex. Stewart Lumber Company, 2,500 feet thereof into the boom of Leahy & Beebe, and 17,350 feet thereof into the boom of Parcher & J. & A. Stewart & Co., at Wausau, without the defendant's consent and in violation of the agreement to deliver the same at his mill, whereby he was damaged in the sum of $25 additional to the sum aforesaid.

The plaintiff replies to the counterclaims, and in effect denies each and every allegation thereof, except as therein admitted; and further replying to the said counterclaims, the plaintiff in effect alleges that during the year 1884 it was only bound to perform the duties of storing, sorting, dividing, and delivering logs and timber with reasonable care and diligence; that it does not now, nor did it in 1884, or at any other time, in any manner insure the owners of logs and timber in its boom against loss or destruction of the same from floods or any other cause which the exercise of reasonable care and protection on the part of the

plaintiff could not avoid; that the river where said boom
is situated is, and always has been, subject to sudden fresh-
ets, which float the logs down to said boom suddenly, and
in such large quantities and with such force that it is not
possible for the plaintiff, by the exercise of reasonable care
and diligence, to prevent the same from being driven under
and through the booms and past the divides, and floating
into parts of said boom further down the stream than the
mills for which they may be designed; that considerable
numbers of the smaller logs coming to said boom each year
become so water-soaked, without any fault or negligence of
the plaintiff, that they sink below other logs, and by the
action of the water are carried under the booms to parts
of the boom below the mills for which they may have been
designed; that, when logs become so misplaced, the work
of taking them back up the current to the mills for which
they are intended is generally so great and so difficult that
the cost thereof would exceed the value of such logs, and
such work has never been done by the plaintiff, nor is it
under any obligation to perform the same, but, in all such
cases, the usage, practice, and course of dealing with ref-
erence to such misplaced logs has been to deliver them to
any mill further down the stream, the owner whereof would
take the same and pay the owner of said logs therefor;
that the facts aforesaid, and the said usage, practice, and
course of dealing, have always been known to the defend-
ant, and to all other mill-owners at Wausau, and no objec-
tion has ever been made by any of said mill-owners, nor by
the defendant, but, on the contrary, the plaintiff and de-
fendant, not only in prior years, but also in 1884 and 1885,
acted upon and followed said practice, usage, and course
of dealing with each other in like cases; that on or about
September 10, 1884, the water in said river, where said
boom is situated, rose to a great and unusual height, by rea-
son of the heavy rains, so that although the plaintiff used

every reasonable precaution, and exercised itself to the utmost to prevent it, the violence of the flood drove many millions of feet of logs against the piers running across the river in said boom, at the first divide therein above the mill of the defendant, forming at that place a great jam of logs, in which said jam the logs were piled one above the other to a great height, and many of the logs, including some belonging to the defendant, were forced under the boom outside the divide and carried to other parts of the boom; that many of the logs so carried below said divide were carried into the mill-pocket of the defendant's mill, and completely filled the same; that in said jam were many logs belonging to the defendant; that the plaintiff broke and divided out the said jam of logs as soon as possible, and, for the reason that the defendant's mill-pocket was full of logs, without its fault or negligence, certain logs of the defendant in said jam were passed by the defendant's mill to other parts of the boom, until room was made in the defendant's mill-pocket to store the same, after which all logs belonging to the defendant in said jam, or above said divide, were delivered at defendant's mill, unless otherwise directed by him; that the plaintiff was not under obligation to deliver said logs of the defendant, so misplaced in its boom and below defendant's mill, at his said mill, but that, in accordance with said usage, practice, and course of dealing, all of the logs so misplaced were divided into the mill-pockets of such mills adjoining the boom further down the river where they could best be received, and a correct scale of all logs so delivered was kept by the plaintiff, together with the mill to which each of such logs was delivered, and the same was given to the respective owners of such logs; that, pursuant to said usage, practice, and course of dealing, the 38,950 feet mentioned were turned by the plaintiff into the mill-pocket of the McDonald Lumber Company, and the 26,990 feet mentioned were turned into the mill-pocket

of the Alex. Stewart Lumber Company, and a correct statement of the logs so turned into each of said pockets was duly given to the defendant in accordance with said usage, practice, and course of dealing, and thereupon, and by reason of such usage, practice, and course of dealing, the millowners to whom said logs were so delivered became liable to the defendant therefor.

At the close of the trial of said issues the jury returned a verdict in favor of the plaintiff, and therein assessed his damages at $286.58. From the judgment entered thereon the defendant appeals.

The cause was submitted for the appellant on the brief of *Bardeen, Mylrea & Marchetti,* and for the respondent on that of *Silverthorn, Hurley, Ryan & Jones.*

CASSODAY, J.    Error is assigned because the court refused to allow the defendant's counsel to open and close the argument to the jury.    This court has held that the question as to " which party is entitled to open and close the argument is a mere rule of practice, and within the control of the courts."  *Cunningham v. Gallagher,* 61 Wis. 170.  It is there further held that " when, in an action to recover unliquidated damages, the defendant confesses the cause of action and pleads in avoidance thereof, the affirmative is with the plaintiff, and he is entitled to open and close the argument to the jury."  The pleadings and proofs in this case clearly bring it within the above rule, and it becomes unnecessary to repeat the reasons for so holding.

There are no exceptions to any portion of the charge, and no part of it is printed.  We must assume, therefore, that it fairly submitted all questions of fact to the jury without error and in a manner in no way prejudicial to the defendant.  It is conceded that 38,950 feet of the defendant's logs passed below his mill, and were delivered by the plaintiff into the pocket of another mill; and that certain

other quantities thereof became, for a time, misplaced in the plaintiff's boom, but were subsequently delivered at the defendant's mill or other places by his direction or consent. It is claimed, however, that such logs so passed below the defendant's mill, and so became misplaced, without any negligence or fault of the plaintiff and notwithstanding the exercise of all reasonable care and diligence on its part; that such passing below and such displacement were inevitable, and such as frequently occur in consequence of the sudden rise and large volume of the stream at the point in question, and the immense quantities of logs in the river above, forming great jams, wherein logs were piled above each other to a considerable depth, and many, including those of the defendant mentioned as having passed below, by reason of their texture, smallness, and becoming water-soaked, were forced under the boom and outside of the divide, and thus carried to other parts of the boom, and into mill-pockets below; that such delivery at other mills and in other mill-pockets, under such circumstances, was in pursuance of a well and long established usage, custom, and course of dealing by and among all parties, including the defendant, on that section of the river; and that the agreement between the plaintiff and defendant, respecting the receiving, storing, assorting, dividing, and delivering the defendant's logs and timber in and at the plaintiff's booms, was made with reference to such usage, custom, and course of dealing. The principal error assigned in this case consists in the admission of evidence tending to establish such usage, custom, and course of dealing.

Of course, it was competent for the plaintiff to absolutely agree to deliver all of the defendant's logs and timber at his mill, and to pay for the value of all not so delivered, as damages for the breach. Had such an agreement, with no ambiguity, been established, it is quite likely that parol evidence of usage, custom, or course of dealing would have

been inadmissible to contradict or vary the terms thereof. *Blackett v. Royal Exchange Ass. Co.* 2 Cromp. & J. 249; *Grace v. American Cent. Ins. Co.* 109 U. S. 283. As tersely stated by Lord LYNDHURST, in this English case, and quoted approvingly by Mr. Justice HARLAN in the other: "Usage may be admissible to explain what is doubtful; it is never admissible to contradict what is plain." But we are cited to no evidence of any such agreement, and we find none in the record. The contract alleged in the answer would seem to be a mere request on the part of the defendant, and a general undertaking on the part of the plaintiff. The plaintiff's charter requires it to pass all logs and timber through its booms into the river below within a reasonable time, and with reasonable diligence, except such as are owned by any person who, on or before a time specified in each year, files "with the secretary of the company a statement in writing," subscribed by him, "setting forth that he desires his logs or timber retained or stored in said booms, and specifying, as near as may be, the number and quantity, and specifying the particular marks or brands thereon." Secs. 11, 12, ch. 45, P. & L. Laws of 1871. The nature of the controversy is such that we may well presume that the defendant filed such written statement, and that, probably, constituted the only agreement between the parties. Of course, the plaintiff was required to exercise reasonable care and diligence in receiving, storing, assorting, dividing, and delivering the defendant's logs and timber, but, in the absence of any specific agreement to that effect, log-owners could not expect it to perform impossibilities. *J. S. Keator Lumber Co. v. St. Croix Boom Corp.* 72 Wis. 62.

Of course, it appears, without saying, that the plaintiff has no control over the suddenness of the rise or the volume of the stream, or of the quantities or character of the logs and timber put in the river by owners above the booms.

The possibility of some logs getting below the booms in consequence of such extraordinary floods and jams is almost inevitable. The impracticability of taking logs back up the stream after having reached a point below their place of destination is very obvious. Such being the circumstances of the case, and the contract or undertaking on the part of the plaintiff being of the general character indicated, we perceive no valid objection to the admission of evidence respecting such usage, custom, and course of dealing. Such evidence, in such a case, manifestly tends to explain and make evident the understanding and intent of the parties upon matters as to which their contract is silent. Of course, such usage, custom, and course of dealing should, in the absence of actual knowledge, be so long continued, and so well known and established, and so uniformly acted upon, as to raise a presumption that it was known to both contracting parties, and that their contract was made with reference to it. *Lamb v. Klaus*, 30 Wis. 94; *Scott v. Whitney*, 41 Wis. 504; *Hinton v. Coleman*, 45 Wis. 165; *Walls v. Bailey*, 49 N. Y. 464; *Sturges v. Buckley*, 32 Conn. 18; *Allegre's Adm'rs v. Maryland Ins. Co.* 20 Am. Dec. 424; *Farnsworth v. Chase*, 19 N. H. 534, 51 Am. Dec. 206.

Here the alleged custom was fully pleaded by the plaintiff, and the defendant had an opportunity to disprove it if he could. If the contract was in fact made with reference to such custom, then there is no good reason why the defendant should not be bound by it. *Governor v. Withers*, 50 Am. Dec. 95. We perceive no error in the admission of such evidence. The evidence seems to be sufficient to justify a finding that the contract was made with reference to such custom or course of dealing.

It is claimed that the verdict cannot be supported by any figures or theory deducible from the evidence. It may well have been found upon the theory pointed out in the plaintiff's brief; but, however that may be, it is based upon so

many different matters, some of which consist of items of unliquidated damages allowable upon the counterclaim, in regard to which there may have been an honest difference of opinion, that we do not feel authorized to disturb the judgment on that ground.

*By the Court.*— The judgment of the circuit court is affirmed.