RYLANDER, Appellant, vs. LAURSEN, Respondent.

*January 10—January 31, 1905.*

*Negligence: Sparks escaping from sawmill: Test of care required: Instructions to jury: Competency of witness as to value.*

1. In an action for damages for the destruction of property by fires alleged to have been set by sparks from defendant's sawmill, there being no evidence as to what spark arresters were used by other mill operators, or even that there were any other mills in that locality, it was error to instruct the jury that it was defendant's duty to use such reasonable means and appliances as were commonly and usually used by men engaged in the same or similar business in that locality in preventing fires from escaping from the smokestacks of their mills.

2. Such instruction was inaccurate, also, because giving as a test
of defendant's negligence the use of such appliances as are
"commonly and usually used by men engaged in the same or
similar business," whereas the true test is the use of such ap-
pliances as are ordinarily used by men of ordinary care and
prudence, or by men generally, engaged in the same or similar
business under the same or similar circumstances.

3. In a purely tort action negligence of the defendant in the use of
appliances in a dangerous business is not to be tested or meas-
ured by the usage of others in the same business in a given
small locality.

4. Where there was credible evidence tending to show that a fire
set by sparks from defendant's mill had been burning some
time on his own premises to the knowledge of his employees,
and had been negligently allowed to escape, it was error to
charge that if defendant was not negligent in allowing sparks
to escape from his smokestack he was not negligent in allowing
the fire to escape from him after it was discovered.

5. A witness who testified that he had worked on logs about fifteen
winters and knew the value of certain logs was competent,
*prima facie*, to testify as to that value, although he had never
bought or sold logs himself.

APPEAL from a judgment of the circuit court for Wash-
burn county: A. J. VINJE, Circuit Judge.  *Reversed.*

*A. L. Bugbee,* for the appellant.

For the respondent there was a brief by *Mead & Hoar,* and
oral argument by *L. H. Mead.*

WINSLOW, J.  This is an action to recover damages for the
destruction of a quantity of saw logs and standing timber
upon lands of the plaintiff by two separate fires which are al-
leged to have been set by the negligent escape of sparks from
the smokestack of defendant's sawmill located upon adjoining
lands.  Upon a former appeal in this action a demurrer to a
counterclaim set forth in the answer was sustained.  See *Ry-
lander v. Laursen,* 113 Wis. 461, 89 N. W. 488, where the
substance of the complaint will be found more fully stated.
The action has since been tried before a jury, a verdict ren-
dered for the defendant, and from judgment upon the verdict
the plaintiff appeals.

The particular negligence alleged and relied on by the plaintiff was in not having a sufficient wire netting or spark arrester at the top of the smokestack of the mill. As to the duty of the defendant in this regard the court charged the jury as follows:

"You are instructed that it was the duty of the defendant in operating his mill to use reasonable care, caution, and prudence in preventing fire escaping from the smokestack of said mill, and that it was his duty to use such reasonable means and appliances as are commonly and usually used by men engaged in the same or similar business in this locality in preventing fires from escaping from the smokestacks of their mills."

Exception was duly taken to the giving of this instruction, and we think rightly, for several plain reasons. In the first place, there was absolutely no evidence in the case as to what appliances in the way of spark arresters were used by other mill operators, nor even that there were any other mills in that locality. This fact alone would be fatal to the instruction, because there is no evidence to which it can apply, and the only way it could be used by the jury would be to draw upon their own knowledge on the point if they had any. This must be error, because the matter is not one of common knowledge.

Further than this, the instruction is inaccurate because it gives as a test the use of such appliances as are "commonly and usually used by men engaged in the same or similar business," whereas the true test is the use of such appliances as are ordinarily used by *men of ordinary care and prudence,* or by men generally, engaged in the same or similar business under the same or similar circumstances. *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671; *Innes v. Milwaukee,* 96 Wis. 174, 70 N. W. 1064; *Jensen v. Hudson S. Co.* 98 Wis. 80, 73 N. W. 434; *Prybilski v. N. W. C. R. Co.* 98 Wis. 416, 74 N. W. 117; *Baxter v. C. & N. W. R. Co.* 104

Wis. 307, 80 N. W. 644; *Sladky v. Marinette L. Co.* 107 Wis. 260, 83 N. W. 514; *Kreider v. Wis. River P. & P. Co.* 110 Wis. 645, 86 N. W. 662; *Boyce v. Wilbur L. Co.* 119 Wis. 642, 97 N. W. 563.

Another feature of the instruction, which, while not fully argued in this case, seems to demand some attention, is that the test to be applied is limited to the usual appliances used by men *in that locality*. As will be seen by reference to the cases last above cited, this court has held that the use of an appliance cannot be called negligent if it be shown to be an appliance ordinarily used by the great majority of men (or, as sometimes expressed, men of ordinary care and prudence, or men generally) engaged in like business under like circumstances. This court has not, so far as we can now ascertain, approved an instruction measuring care in the use of appliances in a dangerous business by the usage of men in a certain small locality, nor can we think that such rule can be safely adopted. Neither do the authorities generally so limit the rule. 1 Thompson, Comm. on Neg. § 31; 4 id. §§ 3769, 3991, 3993, and cases cited.

It is true that, as bearing on the question of defendant's negligence, it has been held that evidence may without error be received of the customary means or appliances used in a certain locality (*Jochem v. Robinson,* 72 Wis. 199, 39 N. W. 383), but this proof is admissible because the evidence of the means used in one locality is a step in the proof of the appliances generally used in many localities. So, when the action is based upon breach of contract, or upon tort arising out of failure to discharge a duty resulting from a contract, local customs or usages, and sometimes even individual customs, may, within certain limits, be proven as tending to show what the contract really was, or upon what the parties in the particular case had the right to depend in their relations with each other. *Marshall v. Am. Exp. Co.* 7 Wis. 1; *Lamb v.*

*Klaus,* 30 Wis. 94; *Wausau B. Co. v. Dunbar,* 75 Wis. 133, 43 N. W. 739; *Hooper v. C. & N. W. R. Co.* 27 Wis. 81; *Shores L. Co. v. Stitt,* 102 Wis. 450, 78 N. W. 562; 1 Morse, Banks & Banking (4th ed.) § 242. Compare, also, the rule in malpractice actions, where the skill required of a physician is said to be that degree of skill usually exercised by physicians in good standing of the same school of practice in the vicinity. *Nelson v. Harrington,* 72 Wis. 597, 40 N. W. 228; *Wurdemann v. Barnes,* 92 Wis. 206, 66 N. W. 111. Again, where the question is whether the plaintiff has assumed the risk, or has been guilty of any other phase of contributory negligence, the manner in which the opposite party has customarily conducted his business in that regard, if known to the plaintiff, may be shown as a fact having a legitimate bearing upon the quality of the plaintiff's act or failure to act. *Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 95 N. W. 100.

It is very apparent, however, that the last two instances of proof of local or individual custom cannot justify a holding that the negligence of the defendant in a purely tort action may be measured by the usage of others in the same business in a given small locality. While the question has not been adequately argued in this case, we feel justified in saying that we see no occasion now to depart from the rule already stated and frequently laid down, to wit, that in such case the defendant's conduct or use of appliances is to be measured by the general conduct or use of people of ordinary care and prudence (or the great majority of people) engaged in the same or similar business under the same or similar circumstances.

In the first cause of action in the present case the defendant was charged with negligence in two respects, viz.: (1) In negligently allowing fire to escape from the smokestack, and (2) in negligently allowing the fire to escape from his own

premises.  As to this cause of action the court charged as follows:

"If the defendant did use the ordinary means and ordinary appliances, and was guilty of no negligence in allowing sparks to escape from his smokestack, then, under the evidence in this case as to the first fire, you cannot find defendant guilty of any negligence in allowing the fire to escape from him after it was discovered."

This was error, because there was evidence in the case, which cannot be called incredible, tending to show that the fire had been burning half an hour upon the defendant's own premises and to the knowledge of some of the defendant's employees before any effort was made to put it out; and by the instruction quoted this evidence, which clearly tended to show negligence in allowing the fire to escape, was taken from the consideration of the jury.

A witness called by the plaintiff to prove the value of the logs destroyed by fire testified that he had worked on logs about fifteen winters, and sawed about 150 of the plaintiff's logs which were burned, and knew their value, but that he had never bought or sold logs himself.  He was then asked how much the logs which he sawed were worth per thousand, and an objection to the question was sustained on the ground that the witness was not competent to testify.  This was error. His testimony·that he had worked on logs for many years, knew the logs in question, and knew their value, was enough, *prima facie,* to permit him to testify as to that value.  Values may be learned in other ways besides in buying and selling the article itself.

*By the Court.*—Judgment reversed, and action remanded for a new trial.