PUMORLO, Respondent, vs. CITY OF MERRILL, Appellant.

*April 7—May 2, 1905.*

*Municipal corporations: Negligence: Defective sidewalk: Injuries to pedestrian: Evidence: Notice to municipal authorities: Instructions to jury: Burden of proof: Requests for instructions: "Ordinary care:" Trial: Appeal and error: Damages.*

1. In an action for personal injuries, evidence as to the bad general condition of a sidewalk, stated in the opinion, is *held* competent for the purpose of showing notice to the city officers of the general defective condition of the walk, it being by the instructions of the court properly confined to that issue.

2. In an action for personal injuries alleged to have been caused by a defective sidewalk, instructions to the jury as to the burden of proof, stated in the opinion, are *held* to be, in effect, the same as a requested instruction on the same subject.

3. In an action for personal injuries alleged to have been caused by a defective sidewalk, the court instructed the jury: "The words 'ordinary care' mean such prudence and care as an ordinarily

careful person would use under the same or like circumstances;" and again in another part of the charge: "The reasonable diligence here mentioned required of public officers of a city having charge of its public streets and walks means such diligence as like officers with like responsibilities usually and ordinarily employ in the discharge of their duties." *Held*, that while the court did not adopt expressions which had been repeatedly approved by the supreme court, and such departure is not the best and safest practice, yet the terms employed in the instructions defining "reasonable diligence" and "ordinary care" are in form and substance as required and approved by that court. DODGE, J., dissents from the approval of the instruction defining "reasonable diligence."

4. When a particular form of expression for the enunciation of a rule of law has been sanctioned and approved as correct and best adapted for conveying an idea to a jury, it should be adhered to by the trial courts to avoid the liability and danger of errors which are liable to follow the use of different terms and a new phraseology.

5. To warrant the giving of an instruction as to the rule *Falsus in uno, falsus in omnibus*, there must be such sufficient basis in the evidentiary facts and circumstances adduced as tends to show there was wilfully false swearing.

6. Whether such rule applies in a given case is primarily a question for the trial court and not for the jury.

7. In determining the propriety of giving instructions as to the rule *Falsus in uno, falsus in omnibus*, the trial court must take into consideration that wilful false swearing is not to be imputed to a witness when it clearly appears that discrepancies, conflicts, and contradictions in the evidence are manifestly honest mistakes, due to faulty observation, imperfect recollection, or mistaken impressions of facts.

8. In such case the decision of the trial judge should be affirmed on appeal, unless it clearly appears it was erroneous.

9. In an action for personal injuries caused by a defective sidewalk, under the evidence, stated in the opinion, it is *held* that the trial court properly refused to give a requested instruction as to the rule *Falsus in uno, falsus in omnibus*.

10. In an action for personal injuries, where there was evidence that plaintiff's spine was affected, that this difficulty extended into the neck, causing much pain in the neck and head, that she suffered much from severe headaches, and that she was often afflicted with coma,—an instruction on the question of damages: "You should consider the nature and extent of her injuries and physical pain and suffering, and the mental injury and anxiety

which she has endured, and the extent of impairment, if any, of her physical or mental powers, or both, which you believe from the whole evidence to have been brought upon her by reason of such injuries," is *held* justified.

11. Where the charge as given by the court is a complete, plain, and direct statement of the rules of law applicable to the case, free from obscurity or argumentation, and sufficiently advises the jury on every rule of law involved in the determination of the issues of fact submitted to them, it is unnecessary to specifically consider errors assigned upon rejected instructions.

12. When and when not to give mere explanatory instructions to the jury is almost wholly a matter of judicial administration, as to which the supreme court will do no more than judicially advise.

APPEAL from a judgment of the circuit court for Waupaca county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

Action to recover damages for personal injuries alleged to have been caused by the insufficient and defective condition of a sidewalk on one of the streets of the defendant, an incorporated city. It appears that on the 14th day of August, 1901, the plaintiff, while walking over one of the sidewalks on one of the public streets of the city, known as Main street, stepped into an opening in such walk, causing her to fall. This walk extends along the north side of a street connecting the part of the city known as the West side with the part known as the Sixth ward. The walk is on one of the principal streets of the city, and is much frequented and used by pedestrians. The walk was constructed of stringers placed lengthwise of the walk and of planks placed crosswise, nailed thereto. The stringers rested on supports, which elevated the walk above the surface of the ground. It is alleged that this walk at the time in question was defective and insufficient, in that the material composing it was so worn and decayed that many parts had loose and broken boards, and that there were large openings or holes in the walk, and that such defective and insufficient condition had existed for a number of weeks before the accident happened, and for

such a length of time that the city officers, in the exercise of ordinary care, ought to have discovered such insufficiency and to have repaired it before the injuries were occasioned thereby. The plaintiff stated that while she was walking over this sidewalk on the day in question at about the hour of 8 o'clock in the evening, and while in the exercise of ordinary care, she stepped into a large hole in the walk, which caused her to fall, and produced the injuries and consequent pain and sickness from which she suffered. Plaintiff caused a notice in writing to be served on the city, as required by sec. 1339, Stats. 1898, and presented a claim against the city for compensation for the damages she had sustained. This claim was disallowed, and thereupon she appealed from such disallowance to the circuit court, where she prosecuted this action. The action was tried before the court and jury. The jury rendered a special verdict and found: (1) That the sidewalk at the time and place in question was not reasonably safe for public use. (2) That the condition of the sidewalk at the place of accident was the proximate cause of plaintiff's injuries. (3) That the hole in the walk into which plaintiff stepped had existed continuously for three weeks or more immediately prior to the injury. (4) That the hole in question existed continuously for such a length of time before the time of the accident that the city authorities, in the exercise of ordinary care, ought to have known of it and to have repaired it before the injury was received. (5) That no want of ordinary care on the part of the plaintiff proximately contributed to the injuries. (6) That the sum of $3,000 would compensate plaintiff for the injuries sustained. The defendant moved for judgment notwithstanding the verdict, on the ground that the evidence did not support the verdict. This motion was denied. Thereupon it moved for a new trial because the court erred in the reception and rejection of evidence and erred in instructing the jury, and because the verdict was contrary to the evidence and the law,

and because the damages were excessive. This motion was denied, and the court thereupon ordered judgment for the plaintiff upon the special verdict for $3,000 damages and the costs of the action. This is an appeal from such judgment.

For the appellant there were briefs by *John Van Hecke,* attorney, and *E. M. Smart* and *E. E. Browne,* of counsel, and oral argument by *Mr. Van Hecke.*

For the respondent there was a brief by *Curtis & Reid* and *F. J. Smith,* and oral argument by *Mr. A. H. Reid* and *Mr. Smith.*

SIEBECKER, J. Error is assigned upon the admission of testimony tending to show the defective condition of the sidewalk for some weeks prior to the day of the accident in the immediate vicinity of the hole complained of as bearing on the question of notice to the city officers of the defective condition of the sidewalk. It is quite clear from the evidence that the defect found by the jury consisted of a hole extending from the center stringer to the side of the walk and that it was due to the worn and decayed condition of the plank. The evidence tended also to show that other planks in close proximity to the defect found had been much worn, decayed, and broken for a considerable time before the accident. Under these circumstances the bad general condition of the walk would attract attention and lead to the discovery of the defect in question. This evidence was competent for this purpose, and by the instructions of the court was properly confined to this question in the case. *Shaw v. Sun Prairie,* 74 Wis. 105, 42 N. W. 271; *McHugh v. Minocqua,* 102 Wis. 291, 78 N. W. 478; *Lyon v. Grand Rapids,* 121 Wis. 609, 99 N. W. 311.

Defendant submitted to the court a request declaring that in cases of this nature the burden of proof was upon the plaintiff to establish by a preponderance of the evidence the

affirmative of every issue involved in the case except as to the question of contributory negligence of the plaintiff. The request was not given as submitted, but the court instructed the jury as to such issues that in answering the several questions submitted the jury must determine the material issues involved in accordance with the effect and weight of the whole evidence carefully and impartially considered; and the court further instructed them in connection with the special questions covering these issues, whereon plaintiff had the burden of proof, and wherein an affirmative finding would establish defendant's liability, that to warrant them in so answering such questions they must be satisfied that their answers were sustained by the weight of the evidence or by the fair weight of the whole evidence. Bouvier, in speaking of the use of the expression "weight of evidence," says it signifies that the proof on one side of a cause is greater than on the other. It is in this sense that the language of the trial court was used in the instructions, and it must have been so understood. This was, in effect, the same as if the instruction as to the burden of proof had been given as requested.

Error is assigned in respect to the court's definitions in its instructions of the meaning of the terms "reasonable diligence" and "ordinary care."

The court instructed the jury that:

"The words 'ordinary care' . . . mean such prudence and care as an ordinarily careful person would use under the same or like circumstances;" and again, in another part of the charge: "The reasonable diligence here mentioned required of public officers of a city having charge of its public streets and walks means such diligence as like officers with like responsibilities usually and ordinarily employ in the discharge of their duties."

The phraseology employed is not as clear and as apt as some which might have been chosen from definitions of these terms in the decisions of this court, but the words convey the

idea embodied in the various definitions of the terms approved by this court. Instances of such definitions are: "Such care as persons of ordinary care and prudence observe in and about their affairs," or "such care as the great mass of mankind, or the majority of mankind, observe in the transactions of human life" (*Dreher v. Fitchburg,* 22 Wis. 675) ; such care as "a person or people of ordinary care and prudence ordinarily use, or the great mass or majority of people observe" (*Duthie v. Washburn,* 87 Wis. 231, 58 N. W. 380) ; "such care as the great majority of men would use under like or similar circumstances" (*Olwell v. Milwaukee St. R. Co.* 92 Wis. 330, 66 N. W. 362) ; "such care as the great mass of mankind ordinarily exercise under the same or similar circumstances" (*Nass v. Schulz,* 105 Wis. 146, 81 N. W. 133) ; "such care as a man of ordinary care and prudence would have exercised under circumstances like those disclosed by the testimony in this case" (*Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 95 N. W. 100). In *Schrunk v. St. Joseph,* 120 Wis. 223, 97 N. W. 946, the test laid down is this: "Would a person of ordinary intelligence and prudence, under the same or similar circumstances, ordinarily so conduct himself?" and in the recent case of *Rylander v. Laursen,* 124 Wis. 2, 102 N. W. 341, which treated of the degree of care required of a man using appliances in a dangerous business, the trial court's definition of it as the care "commonly and usually used by men engaged in the same or similar business" was held to be erroneous, and it was stated that "the true test is the use of such appliances as are ordinarily used by men of ordinary care and prudence, or by men generally engaged in the same or similar business under the same or similar circumstances." The result to be deduced from all these various forms of expression is, as stated in *Dehsoy v. Milwaukee E. R. & L. Co.* 110 Wis. 412, 85 N. W. 973, that ordinary care is that degree of care "which the great mass of mankind, or the type of that mass,

the ordinarily prudent man, exercises under like circumstances." As an abstract proposition it is such care as the great mass of mankind generally exercise; and when it is sought to apply this degree of care to the affairs of life it must be applied to the same or similar circumstances. This standard excludes as erroneous the idea that it is such care as *any person or persons would exercise under similar circumstances,* because such care may not be the care an ordinarily prudent person generally exercises under the same or similar circumstances. As stated in *Nass v. Schulz,* 105 Wis. 146, 81 N. W. 133:

"Such expressions as 'persons' or 'a person' or 'people ordinarily use' have been uniformly condemned by the courts as giving an incorrect standard by which to measure the conduct of a person charged with actionable negligence."

If the instructions before us came within this class we would necessarily condemn them as prejudicially erroneous. The question, then, arises whether these instructions as given by the court embody the ingredients essential for informing the jury as to what constitutes ordinary care and reasonable diligence as applied to the facts and circumstances of this case. It is true the court did not adopt the form of expression which has been repeatedly approved by this court, and such departure is to be condemned as not the best and safest practice. When a particular form of expression for the enunciation of a rule of law has been sanctioned and approved as correct and best adapted for conveying the idea to a jury it should be adhered to by the trial courts to avoid the liability and danger of errors which are very liable to follow the use of different terms and a new phraseology. The terms employed in the above instruction as defining "ordinary care" are, we think, free from fault and are within the strict limits of the decisions. In speaking of the reasonable diligence required of city officers having charge of its public streets and walks, the court said it "means such diligence as

*like officers of like responsibilities* usually and ordinarily employ in the discharge of their duties." These terms, in their ordinary and usual significance, convey the idea that the reasonable diligence required of them is of that degree usually and ordinarily employed by such city officers as a class, or the generality of them, in the discharge of like responsibilities; that is, the diligence ordinarily employed by them in performing the same or similar duties. The language does not limit the standard of diligence to that which any officer or officers would ordinarily use, but it means the diligence used by the majority of such officers, or by them generally as a class, under the same or similar circumstances. Though the expression is somewhat involved in obscurity, and may be said to be erroneous in the sense that it is not framed in the usual and accepted terms approved by this court on the subject, yet we cannot say that this is harmful error, because the jury in all reasonable probability understood it in its correct sense as above indicated. In its final analysis this is the fair and natural meaning to be given the context of this instruction, and it and the one given by the court defining ordinary care are in form and substance as required and approved by the foregoing adjudications of this court.

An exception is urged to the refusal of the court to give the instruction as to the rule of *"Falsus in uno, falsus in omnibus."* To warrant the giving of such an instruction there must be a sufficient basis in the evidentiary facts and circumstances adduced as tends to show that there was wilfully false swearing. Whether such a rule applies to the consideration of the evidence of a case is primarily a question for the trial court and not for the jury. It therefore devolves upon the trial court, before ruling on such a request, to determine whether, under the facts and circumstances, there is any evidence tending to show that a witness or witnesses whose evidence is to be submitted to the jury did wilfully

swear falsely.  In the determination of this question the court must take into consideration that wilfully false swearing is not to be imputed to a witness when it clearly appears that discrepancies, conflicts, and contradictions in the evidence are manifestly honest mistakes, due to faulty observation, imperfect recollection, or mistaken impressions of facts. The court must find something either in the appearance, demeanor, or manner of a witness while testifying, or such a conflict or contradiction between him and the other witnesses in the case, or such an inherent incredibility in the facts testified to by him, as would reasonably tend to show that the witness wilfully swore falsely.  The decision of the question on the evidence by the judge presiding at the trial is given much weight, due to his superior advantages for the observation of witnesses while testifying, the understanding of the application of testimony to the facts and circumstances of the case, and the other matters appearing on the trial which throw light on the honesty and fairness of persons testifying. As stated in *White v. Maxcy,* 64 Mo. 552:

"Such an instruction is always calculated to intimate that in the opinion of the court trying the case some of the witnesses had testified falsely, and the court presiding at the trial is better qualified than we are to determine the propriety of giving or refusing such an instruction."

The reasoning adopted in *Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573, though applied to a different question from the one here involved, applies with cogency to this case.  It is there said that whenever the trial court concludes that there could be but one reasonable inference from all the evidence in the case as to the question involved, the question thus presented being one of law for him to decide, "a decision thus rendered must be affirmed on appeal, unless it clearly appears that it was erroneous."

"It is the uniform rule that their [the trial courts'] determination of questions of fact cannot be disturbed unless

against the clear preponderance of the evidence. The reasons for that rule do not apply as strongly to decisions as to whether the inferences to be drawn from undisputed facts are all one way, but the opportunities which a trial judge has for determining such questions are superior to those possessed by the appellate court, and on this ground are entitled to considerable weight, and, where the question is doubtful, to controlling weight." *Ingalls v. State,* 48 Wis. 647, 4 N. W. 785; 2 Thompson, Trials, §§ 2423–2425; Blashfield, Inst. to Juries, § 252; *State v. Palmer,* 88 Mo. 568; *White v. Maxcy,* 64 Mo. 552; *Kay v. Noll,* 20 Neb. 380, 30 N. W. 269; *State v. McDevitt,* 69 Iowa, 549, 29 N. W. 459; *State v. Thompson,* 21 W. Va. 741; *James v. Mickey,* 26 S. C. 270, 2 S. E. 130; *Strasser v. Goldberg,* 120 Wis. 621, 98 N. W. 554.

It is insisted in argument that plaintiff so contradicted the testimony given by her on a former trial and that she made such denials of plain and evident facts, within her knowledge, as tends to show that she wilfully swore falsely. In support of this claim it is pointed out that she stated that she passed over this walk in daylight at different times during a period of several weeks before the accident, and that she claims not to have seen the hole, and that on the last trial she testified that she went from her house and called on Mrs. Landry for about twenty minutes before passing over this walk in going to the store, while on the former trial she wholly omitted to testify to this fact. It is urged that this fact was adduced at the last trial for the purpose of showing that she passed over the walk at so late an hour in the evening that it was impossible for her to see the hole in the walk, and that such evidence was adduced for the further purpose of freeing her from contributory negligence. There is nothing in this evidence to indicate that this was a wilfully false statement or that there was a wilful suppression of the facts on the former trial. It seems simply to have been overlooked. Upon this point she is fully corroborated by the evidence of Mrs. Landry, on whom she called, and by that of her son

Lawrence, who accompanied her. We can perceive nothing in that part of her testimony in which she denied that she saw the hole in the walk at the times she passed over it before the accident as suggestive of wilfully false swearing, though there was evidence that the hole existed at that time. The fact that she did not then see it may readily be explained by inattention to the condition of the walk through occurrences which are of common experience to pedestrians traveling on sidewalks. All other conflicts between other witnesses as to the existence of this defect and the length of time it existed are readily explainable upon the grounds of differences in observation and recollection or mistakes as to time and place. Under the rule of the foregoing cases we are led to the conclusion that the court properly refused to give the requested instruction. *Ingalls v. State,* 48 Wis. 647, 4 N. W. 785, and other cases cited above.

The court instructed the jury on damages as follows:

"You should consider the nature and extent of her injuries and physical pain and suffering, and the mental injury and anxiety which she has endured, and the extent of impairment, if any, of her physical or mental powers, or both, which you believe from the whole evidence to have been brought upon her by reason of such injuries."

It is complained that it was error to include any damages for impairment of her mental powers. There was evidence that plaintiff's spine was affected, and that this difficulty extended into the neck, and caused much pain in the neck and head, and that she suffered much from severe headaches, and that she was often afflicted with coma. We find the instruction was justified by the evidence.

Appellant assigns twenty-nine separate errors, some upon the court's refusal to give the thirty-three separate propositions of law requested by it, and a number upon the charge as given by the court. We have examined them, and considered those which present material and pertinent questions

on contested issues in the case. The charge given by the court is a complete, plain, and direct statement of the rules of law applicable to the case, free from obscurity or argumentation, and it sufficiently advised the jury on every rule of law involved in the determination of the issues of fact submitted to them. This renders it unnecessary to specifically consider the other errors assigned upon the rejected instructions submitted by appellant. As stated by this court in *Wunderlich v. Palatine Ins. Co.* 115 Wis. 509, 92 N. W. 264:

"Refusals to give mere explanatory instructions, or instructions giving a rule of law in a different form from that used by the trial court without suggestion from counsel, such form being free from error and the language understandable by persons of ordinary comprehension, does not constitute prejudicial error, if error at all, regardless of whether a requested instruction would probably have aided the jury in better comprehending the rule of law involved. *Buel v. State,* 104 Wis. 132, 151, 154, 80 N. W. 78. When and when not to give mere explanatory instructions is almost wholly a matter of judicial administration, as to which this court will do no more than judicially advise." *Duthie v. Washburn,* 87 Wis. 231, 58 N. W. 380; *Fox v. Martin,* 104 Wis. 581, 80 N. W. 921.

We find no error in the record.

*By the Court.*—The judgment is affirmed.

Dodge, J. (*dissenting*). My dissent is from the approval of the instruction that the reasonable diligence required of public officers "means such diligence as like officers with like responsibilities usually and ordinarily employ in the discharge of their duties." It is unfortunate, after this court has with so much industry defined the essentials of ordinary care and prescribed the approved manner of conveying that definition, even with some appearance of impatience in criticising trial courts for departing ever so slightly from such

approved *formulæ,* that we should ourselves throw into confusion and obscurity the lines so carefully drawn. The standard of ordinary care with which the jury are to compare the acts under examination is the customary conduct, under like circumstances, of the great mass of mankind, or their type, the ordinarily prudent person. Here are three essential elements—similarity of circumstances, customariness of conduct, and ordinary character of the individual. The first two are sufficiently required by the instruction before us, but not the last. "Like officers" does not require the jury to consider ordinarily careful officers for comparison, any more than the expressions "people," "persons," or "men" compel comparison with ordinarily careful people, persons, or men; but each of these latter expressions has been held insufficient and prejudicially erroneous by this court. *Duthie v. Washburn,* 87 Wis. 231, 233, 58 N. W. 380; *Nass v. Schulz,* 105 Wis. 146, 150, 81 N. W. 133; *Rylander v. Laursen,* 124 Wis. 2, 102 N. W. 341; *Dehsoy v. Milwaukee E. R. & L. Co.* 110 Wis. 412, 416, 85 N. W. 973. Indeed, the opinion of the court reaffirms the necessity that the person with whose usual conduct comparison is to be made by the jury must be expressly defined as either an ordinarily careful person or as typical of the great mass of mankind, but holds that the expression "usually and ordinarily employ," appended to like officers, conveys that idea. That view is, however, expressly repudiated in three of the above-cited cases. In the *Duthie Case* the condemned expression was "such care as people ordinarily use," "which," said Orton, J., "might be gross negligence"—as obviously it might if the "people" were grossly careless ones. Likewise it might be far in excess of ordinary care if such persons were excessively cautious ones. The conclusion of the court thus, in defiance of its own clearest declarations, is the more surprising when we notice that in every one of the many quota-

tions made apparently in its support in the opinion the vice
now complained of was carefully avoided by use of the ex-
pression "great mass of mankind," or "ordinarily prudent
persons."