BISHOP, Administrator, Respondent, vs. BELLE CITY STREET RAILWAY COMPANY, Appellant.

*December 21, 1895 — January 7, 1896.*

*Street railways: Frightening horse: Liability for resulting injury or death: Collision: Negligence of motorman.*

1. An electric street car, running in the ordinary way, is not a defect in the highway or an object naturally calculated to frighten horses of ordinary gentleness, so that the mere fact that a horse took fright at such a car would render the street railway company liable for resulting injuries or death.

2. A motorman who, when he saw a horse running away, at once threw off the current and slowed down his car, and, as soon as he saw the horse turn to cross the track, put on the reverse current and the brakes and stopped the car as quickly as possible,— so that after he first saw the horse his car ran only from thirty to fifty feet,— is *held* not to have been guilty of negligence which would render the street railway company liable for the death of the driver of the horse caused by collision with the car, even though, in the light of the result, it seems that it would have been better had he stopped the car at once.

| 92 | 139 |
|----|-----|
| 94 | 168 |
| 92 | 139 |
| 96 | 460 |
| 92 | 139 |
| 99 | 197 |
| 99 | 363 |
| 92 | 139 |
| 98 | 565 |
| 92 | 139 |
| 104 | 259 |
| 92 | 139 |
| 108 | 328 |

APPEAL from a judgment of the circuit court for Racine county: FRANK M. FISH, Circuit Judge. *Reversed.*

This action is to recover damages for the death of the plaintiff's intestate, Edward Birch, which was caused November 4, 1893, by a collision with one of the defendant's moving cars. The answer consists of admissions and denials, and alleges that the intestate's death was the result of the negligence and want of care of the deceased in the management and control of the horse he was driving at the time.

At the close of the trial the jury returned a special verdict to the effect (1, 2) that the motorman in charge of the car in question, after he had discovered, or by the use of reasonable diligence could have discovered, that the horse driven by deceased was beyond its driver's control, did not use reasonable care and caution to avoid danger to the deceased; (3) that the horse, before and at the time he turned to cross the track of the company in front of the approaching car, was beyond the control of the driver; (4) that the death of the deceased was caused by the injuries sustained from being struck by the defendant's car; (5) that the jury found for the plaintiff, (6) and assessed his damages at $500. From the judgment entered thereon in favor of the plaintiff the defendant appeals.

*Thomas M. Kearney,* for the appellant, argued, among other things, that, it being conceded that the car of the defendant was lawfully upon the track in the highway, and that it in no wise constituted a nuisance, obstruction, or defect therein, the defendant cannot be held liable for damages caused by the fright of the horse through the sight of the car alone. Booth, St. R. Law, § 298, and cases cited. In order to make the defendant liable in this case it was incumbent upon the plaintiff to sustain the averment of his complaint that, after Mr. Birch was carried by his horse into a position of danger, the defendant negligently ran its car so as to come in contact with him and thereby cause his death.

See *Philadelphia T. Co. v. Bernheimer*, 125 Pa. St. 615; *Steiner v. Philadelphia T. Co.* 134 id. 199; *North Side St. R. Co. v. Tippins*, 4 Tex. App. Civ. Cas. 226; *Coughtry v. Willamette St. R. Co.* 21 Oreg. 245; *Brocklehurst v. Manchester B. R. & O. S. T. Co.* L. R. 17 Q. B. 118; *Cornell v. Detroit E. R. Co.* 82 Mich. 495; *Yingst v. Lebanon & A. St. R. Co.* 167 Pa. St. 438, and cases cited; *Chapman v. Zanesville St. R. Co.* 27 Weekly L. Bul. 70.

*Wallace Ingalls*, attorney, and *John B. Simmons*, of counsel, for the respondent, cited *Muncie St. R. Co. v. Maynard*, 5 Ind. App. 372; Elliott, Roads & S. 584–590; *Mentz v. Second Ave. R. Co.* 3 Abb. Dec. 274; *Lynam v. Union R. Co.* 114 Mass. 83; Thompson, Neg. 396, note 1; Id. 399, note 4; *Ellis v. L. & B. R. Co.* 160 Mass. 341; *Gibbons v. W. B. St. R. Co.* 155 Pa. St. 279.

CASSODAY, C. J.   The undisputed evidence and the facts as claimed by the plaintiff are to the effect that Washington avenue, in Racine, runs east and west; that the defendant's double street-railway tracks are located thereon; that crossing that avenue, and at right angles with it, is Herrick avenue; that some 300 or 400 feet west of that avenue, and parallel with it, is Packard avenue; that about 100 feet east of Packard avenue, and parallel with it, is an alley leading south from Washington avenue; that on the north side of Washington avenue, and from 132 feet to 150 feet west of Herrick avenue, is the dwelling house of Mr. Lonergan, fronting on Washington avenue; that between 3 and 4 o'clock in the afternoon of November 4, 1893, the deceased, a farmer, seventy-one years of age, but in good health and strong and powerfully built, was, with others, returning from the burial of a neighbor at Mound Cemetery, and driving east along and on the south side of Washington avenue; that the deceased was at the time driving his own horse, attached to a single top buggy, in which he alone was riding;

Bishop vs. Belle City Street R. Co.

that his was the last in the line of vehicles returning from the cemetery; that at a point about midway between Packard avenue and Lonergan's house the deceased's horse became frightened at the defendant's electric car, then east of Herrick avenue, and coming west on the north railway track; that the deceased was then hallooing and trying to hold the horse, but had lost control of him; that the horse went back and forth, or in a zigzag course, for some time, over both of the railway tracks; that the horse got worse as the defendant's car approached; that when the car got in close proximity to the horse going east on the south railway track, or a little south of it, the horse made a sharp turn to the north, immediately in front of the moving car, and partially capsized the buggy, and threw the deceased to the ground in front of the moving car, which struck him and caused his death, but the car wheel did not touch him,—it was about three feet from him; that during all the time from when the horse passed Lonergan's house until the deceased was so thrown out the horse was uncontrollable; that the car was slowed down a little west of Herrick avenue, to let a man get off; that there were three other passengers on the car; that the car then started up, and ran thirty or forty feet west of Herrick avenue, when the motorman first saw the horse, wild and running east on the south side of the south track; that he at once threw off the current and slowed down the car; that as soon as he saw the horse turn north to cross the tracks, he put on the reverse current and the brakes, and stopped the car as quickly as he possibly could; that the car stopped about half way between Herrick avenue and Lonergan's house; that the motorman had three years' experience as such.

Thus it appears that the starting up of the car a little west of Herrick avenue and the final stopping of the car, regarding the evidence in the most favorable light for the plaintiff, must have been confined to a space of from sixty

to eighty feet. That the horse was uncontrollable and running away at the time of the accident is not only alleged in the complaint and proved by the undisputed evidence, but found by the jury. This court has repeatedly held, in effect, that there can be no recovery against a town in consequence of injuries sustained by reason of a runaway or uncontrollable horse coming in collision or contact with a defective highway. *Houfe v. Fulton,* 29 Wis. 306; *Jackson v. Bellevieu,* 30 Wis. 250; *Roberts v. Wis. Tel. Co.* 77 Wis. 589; *Loberg v. Amherst,* 87 Wis. 634. Commenting upon cases in other courts, DIXON, C. J., in the case first cited, said: "Some of these cases seem to go upon the principle that, the horses being actually uncontrollable, the plaintiff is unable to show the exercise of ordinary care or of any care at the time of the injury in order to avoid it. Others say that the fright or unmanageableness of the horses is the misfortune of the traveler, of which he must bear the loss. A better reason would seem to be that it is not within the spirit or intent of the statute that the towns shall be bound to provide roads that shall be safe for frightened and runaway horses; that the remedy is presumed to have been given only to those who have their horses and carriages under their control at the time." He then states that a "recognized exception" to the rule is "that a horse is not to be considered uncontrollable that merely shies, or starts, or is momentarily not controlled by his driver." This exception has since been recognized. *Schillinger v. Verona,* 85 Wis. 599.

This court has recognized another exception to the rule stated, which is to the effect that objects within the limits of a highway, naturally calculated to frighten horses therein of ordinary gentleness, may constitute a defect in the highway; and where a traveler's horse of ordinary gentleness is actually frightened by such an object, and runs away, the town may, in case the driver was at the time in the exercise of ordinary care, be held liable. *Schillinger v. Verona,* 85

Wis. 596, and cases there cited. We cannot hold that a street-railway car is such a defect, nor that it is such an object. The complaint alleges, in effect, that the defendant is a corporation duly organized and existing under and by virtue of the laws of this state, and engaged in the business of operating and running the street-railway cars of the defendant in Racine, propelled by electric power. Thus, the legislature gave the defendant express authority to run its electric cars upon the street in question in the ordinary way. There is no evidence that the defendant did not so run the car in question at the time the intestate's horse so took fright, nor at any time.

In *Abbot v. Kalbus*, 74 Wis. 504, a traveler's horses, while being driven across the railway tracks of the Wisconsin Central in Oshkosh, became frightened at a locomotive near, engaged in switching cars, and ran away and injured the driver, and the action was to recover damages therefor. The act of negligence complained of was that the company's servants wantonly, recklessly, and negligently ran and operated the locomotive and cars with undue speed and great and unnecessary noise and commotion, and wantonly and with unnecessary violence exhausted and blew off steam, and violently rang the bell, thereby frightening the horses and causing them to run away. The evidence on the part of the plaintiff tended to prove that the engine doing the switching had "a pretty big head of steam on, and was exhausting outside;" that "it had its cylinder cocks open, and made a great deal of noise in blowing off steam;" but this court held that it was error for the trial court to refuse to instruct the jury, among other things, to the effect that the authority to operate a railroad includes the right to make the noises incident to the movement and workings of its engines and cars; that it was not liable, while exercising its rights in a lawful and reasonable manner, for injuries occasioned by horses, being driven upon the highway, tak-

ing fright at such noises and running away; that there was
no evidence in the case tending to show that, as to the mat-
ters mentioned, the company was guilty of any want of or-
dinary care.    See, also, *Cahoon v. C. & N. W. R. Co.* 85 Wis.
570.

It follows, from what has been said, that the mere fact
that the intestate's horse took fright at the approaching car
gave to the plaintiff no right of action for the death result-
ing from the fright of the horse.    *Ibid.; Yingst v. L. & A.
St. R. Co.* 167 Pa. St. 438.

It is always easier to determine the best method of escap-
ing a collision with a runaway horse after the transaction
than before.    The motorman appears to have been vigilant
and active from the moment he first saw the horse coming
until the collision.    During that time his car only passed
over a distance of thirty to fifty feet.    Had the horse con-
tinued in the course he was then running, there would have
been no collision.    There were two or more lines of action
open to the motorman in the presence of imminent danger.
He was compelled immediately to choose one of them, and
he did so, apparently in good faith.    It is claimed that if
he had at once stopped the car there would have been no
collision.    But, if he had, who can tell that the horse would
have turned just as he did, or that there would have been no
collision?    Neither the motorman nor the defendant is liable
merely for failing to choose what, after the result was as-
certained, might seem to have been the best means of escape.
*Gumz v. C., St. P. & M. R. Co.* 52 Wis. 672; *Lynch v. N. P.
R. Co.* 84 Wis. 352.    We must hold that there is no evi-
dence to sustain the first and second findings of the jury in
this case.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause is remanded for a new trial.