GOULD and another, Respondents, vs. MERRILL RAILWAY &
LIGHTING COMPANY, Appellant.

*April 21—May 11, 1909.*

*Appeal and error: Estoppel to allege error: Drawing jury: Refusal
to discharge jury: Harmless error: Street railroads: Negligence:
Pleading: Injuries to persons using the street: Duty of motor-
man: Negligence of motorman: Gross negligence: Questions for
jury: Proximate cause: Instructions to jury: Notice of injury:
Amendment of answer: Requests for instructions: Admission
and exclusion of evidence: Duplication of damages: Measure of
damages: Domestic animals: Bill of costs: Items.*

1. The drawing of a jury for the trial of the cause, after issue
joined but before filing the summons and complaint, is not error
of which one who has participated in the selection of the jury
can complain.

2. In the absence of proof of actual misconduct on the part of the
jury, it is not prejudicial error to refuse to discharge the jury
and grant a *venire de novo* upon the ground that the trial, in-
terrupted by adjournment, had been continued over a period
of six weeks, although but six days of that time was spent in
actual trial.

3. In an action for injuries alleged to have been caused by the neg-
ligent management of a street car, a complaint charging acts
of the motorman to have been done "negligently, carelessly,"
etc., not intentionally, does not charge gross negligence, al-
though it is also averred that the motorman knew the probable
consequence of his acts.

4. To constitute gross negligence the act or omission causing the
injury must itself have been wanton or wilful.

5. Where the only negligence which could be charged against a
street railway company consisted in the motorman unneces-
sarily continuing to sound his gong after he saw the frightened
condition of a team of horses or in failing to stop or slacken
the speed of his car under the same circumstances, and while
the mere fact that the horses took fright at the approaching
car gave no right of action, if the condition of the team run-
ning away was so visible to the motorman that he must have
known the cause of their fright, and took no precaution to
slacken the speed of his car or stop ringing his gong, or both,
the railway company is liable.

6. A motorman of a street car is required to keep a proper lookout

to avoid collision with persons or vehicles also using the streets, and to do all that an ordinarily prudent and careful person under like circumstances would do to avoid injuring others lawfully using the streets.

7. Whether or not, considering the shortness of time that a motorman rang his gong and the shortness of the distance traversed after he was aware of the frightened condition of a team of horses, the motorman was negligent in failing to slacken his speed or stop ringing his gong, is for the jury.

8. Where a probable potential cause is shown which may be identified as the proximate cause and made to answer the legal definition thereof by inferences of fact from direct or circumstantial evidence before the jury, the jury may identify this as a proxi-- mate cause, although strict logic might discover other causes which the jury might from the same evidence have found to be the proximate cause.

9. What is the proximate cause of an injury is usually and ordinarily a question of fact, and probative inferences from facts in evidence cannot be disposed of by styling them conjectures.

10. In instructions to the jury the use of the adjective form "ordinary" instead of the adverbial form "ordinarily," to qualify or modify the adjective "prudent," is not ground for reversal unless the jury were misled thereby.

11. A street railway company is not one of the railroad corporations covered by sec. 1816b, Stats. (1898), and an action for injuries to a team of horses is not one to recover damages for injury to the person mentioned in subd. 5, sec. 4222. Hence it is proper to deny an application for leave to amend an answer interposed in an action for damages arising from the killing of a team of horses by the negligence of a street railway company, so as to allege the commencement of the action more than one year after the injury, and that no notice of the injury was given.

12. Refusal to give correct requested instructions is not error where the instructions given fairly cover the points contained in the requests.

13. Error in rejecting competent evidence is harmless where the same witness is permitted to give such evidence fully on cross-examination.

14. The supreme court will not consider an assignment of error to the admission of evidence in the absence of sufficient exception.

15. Where, in addition to evidence tending to show a depreciation in value of a horse by reason of an injury sustained, the plaintiff offered evidence of the value of its use over and above the cost of keeping, an instruction permitting the jury to assess damages consisting of the depreciation in market value, plus the

value of the use of the horse during the time it was incapaci-
tated, plus the cost of doctor's services and medicines and serv-
ices of others necessarily performed, plus reasonable and nec-
essary cost of maintenance, not exceeding all together in any
case the actual value of the horse when injured, does not au-
thorize duplication of damages, since the value of lost use men-
tioned, construed with reference to the evidence, means the
value of the use of the horse over and above the cost of its
keeping.

16. Where there is a recovery of the full value of a horse there can
be no additional recovery for loss of use of the horse.

17. Items of a bill of costs consisting of charges for drafting requests
for instructions, drafting affidavits on motion to modify an
order, drafting notice of examination of adverse party, drafting
order denying motion to limit examination of adverse party,
attending motion out of term to limit the examination, and at-
tending on examination of witnesses out of court, are "neces-
sary entries, pleadings and proceedings in an action according
to the practice of the court," within the calls of sec. 2921, Stats.
(1898), and are properly allowed.

APPEAL from a judgment of the superior court of Lincoln
county: ALMON A. HELMS, Judge. *Affirmed.*

For the appellant there was a brief by *F. J. Smith* and
*John Van Hecke,* attorneys, and *B. R. Goggins,* of counsel,
and oral argument by *Mr. Goggins* and *Mr. Smith.*

Among other references upon the part of the appellant were
the following: *Rideout v. Winnebago T. Co.* 123 Wis. 297,
101 N. W. 672; *O'Brien v. C., St. P., M. & O. R. Co.* 102
Wis. 628, 78 N. W. 1084; *Cawley v. La Crosse City R. Co.*
101 Wis. 145, 77 N. W. 179; *Walters v. C., M. & St. P. R.
Co.* 104 Wis. 251, 80 N. W. 451; *Collins v. Janesville,* 117
Wis. 415, 94 N. W. 309; *Weed & G. Mfg. Co. v. Whitcomb,*
101 Wis. 226, 77 N. W. 175; *Wherealt v. Worth,* 108 Wis.
291, 84 N. W. 441; *Duthie v. Washburn,* 87 Wis. 231, 58 N.
W. 380.

For the respondents there was a brief by *Smart & Curtis,*
and oral argument by *E. M. Smart.*

Among other references upon the part of the respondents
were the following: *Van Salvellergh v. Green Bay T. Co.* 132

Wis. 166, 111 N. W. 1120; *Eastwood v. La Crosse City R. Co.* 94 Wis. 163, 68 N. W. 651; *Fay v. M., St. P. & S. S. M. R. Co.* 131 Wis. 639, 111 N. W. 683; White's Supp. to Thomp. Neg. § 1420; *Nolan v. Kroening,* 130 Wis. 79, 109 N. W. 963; *Bohn v. Racine,* 119 Wis. 341, 96 N. W. 813; 1 Suth. Dam. § 57; 4 Suth. Dam. § 1101; *Dunn v. State,* 125 Wis. 181, 102 N. W. 935; *Palmer v. Schultz,* 138 Wis. 455, 120 N. W. 348; *Hill v. Durand,* 58 Wis. 160, 15 N. W. 390; *Woodruff v. Depere,* 60 Wis. 128, 18 N. W. 761; *Bonesteel v. Orvis,* 31 Wis. 117; *Lam Yee v. State,* 132 Wis. 527, 112 N. W. 425; *Sweain v. Donahue,* 105 Wis. 142.

TIMLIN, J.   The plaintiffs in this action, founded upon alleged negligence of defendant, had a special verdict finding the motorman in charge of defendant's car negligent; that this negligence was the proximate cause of the injury to plaintiffs' horses, wagons, and harness; that the plaintiffs were free from contributory negligence and their damages were $450.   Considering the commonplace nature of the action and the amount involved, the litigation seems to have been conducted with such zeal, industry, and pugnacity from the selection of the jury to the final taxation of costs as to present an unusual number of disconnected questions, necessitating to cover these questions an opinion of some length.   We shall be obliged to rule upon some of them without discussion.

1. Drawing the jury for the trial of the cause, as provided for in ch. 295, Laws of 1905, as amended by ch. 272, Laws of 1907, after the commencement of the action and after issue joined but before filing the summons or complaint, was, to say the least, not error of which appellant, after having participated in the selection of that jury, can complain. We are inclined to the opinion that the fact of an action pending and at issue gives the right to demand and obtain in the manner provided by these statutes the jury there mentioned,

and that these objections, including the objection that the notice of trial did not fix any time for the hearing while the venire fixed a definite time for the return of the jurors, are technical and unsubstantial.

2. Error is assigned because of the refusal of the trial court to discharge the jury and grant a *venire de novo* upon the ground that the trial commenced on April 29, 1908, and was interrupted by several adjournments necessitated by the illness and death of the wife of the presiding judge, and was not finally concluded until June 6, 1908, although only six days of this time was spent in actual trial. It is said that during these adjournments the jurors had opportunity to see and did frequently see the street in question and points therein mentioned by the witnesses, but no actual misconduct on the part of the jury is charged. There was in this no error prejudicial to appellant.

3. The complaint averred that plaintiffs were copartners and owners of two certain horse teams with wagons and harness, the defendant a corporation operating a street railway on West Main street and elsewhere in the city of Merrill, and while the plaintiffs were lawfully traveling with said teams and wagons westwardly on West Main street the motorman of defendant in charge and control of an electric street railway car also moving westwardly in said street approached the teams from the rear and "negligently, carelessly, unnecessarily, repeatedly, and continuously sounded the gong on said car in a loud and noisy manner," causing the rear team to become frightened. The motorman saw that the team was frightened and knew that, unless he desisted from rapid approach and from sounding of the gong, he would cause the team to get from the control of the driver and do serious damage, but, notwithstanding, "carelessly and negligently continued to sound said gong and make a loud noise, and negligently and carelessly failed to stop or to slow up or place the car under control, but negligently, carelessly, and noisily ran

the said car along behind the said team, and caused the same to become further and more excited and to start to run," etc., so that the teams both ran away and were injured, to plaintiffs' damage as stated.

It is contended that this complaint is based upon a charge of gross negligence, hence the trial court erred (1) in not so construing it; (2) in overruling the objections to the reception of evidence of negligence; (3) in not granting a motion for a nonsuit; (4) in not granting defendant's motion for a directed verdict; (5) in not correcting the verdict and rendering judgment in favor of the defendant on the verdict as corrected. But all these alleged errors disappear if the complaint merely charged ordinary negligence. We find no charge of gross negligence in the complaint. All the acts of the motorman complained of are charged to have been done "negligently, carelessly," etc., not intentionally. True, it is averred that the motorman knew the probable consequence of approaching rapidly ringing his gong, but that is not enough under the rule relative to gross negligence adopted by this court. Nothing is more common in ordinary negligence cases than to submit a question to the jury asking whether the defendant knew the consequences of his act. The disposition has been to err in such case by including in one question whether the defendant knew or ought in the exercise of ordinary care to have known these consequences. *Du Cate v. Brighton,* 133 Wis. 628, 114 N. W. 103; *Howard v. Beldenville L. Co.* 134 Wis. 644, 114 N. W. 1114. But to constitute gross negligence the act or omission causing the injury must itself have been wanton or wilful. *Wilson v. Chippewa Valley E. R. Co.* 135 Wis. 18, 114 N. W. 462, 115 N. W. 330. Illustration: The consequence of ringing the bell may be to frighten one team, but it may be required at the place by law or at the same time necessary to warn another. This group of alleged errors is therefore not effective for reversal.

4. Appellant next contends that, assuming the complaint

to state a cause of action for ordinary negligence, there was no evidence to support the finding of the jury that defendant was guilty of negligence which was the proximate cause of the injury complained of, hence that there was error in denying a nonsuit, in denying a motion to direct a verdict for defendant, in denying a motion to change the answers of the jury affirming its negligence and affirming proximate causation, to negative answers, and in denying certain requested instructions drafted with this view of the case. There is an unusual, and it would almost seem an unnecessary, difference between counsel with respect to the facts proven. This difference has materially increased the labor of this court and required a very close and critical examination of the facts in detail. Summed up these facts are as follows:

In the city of Merrill, Genesee street, fifty feet in width and running north and south, crosses West Main street, sixty feet in width and running east and west, and this crossing we take for a starting point. All points referred to, all acts of negligence, and all injuries in question occurred in West Main street west of this point and while the car in question and plaintiffs' teams were traveling west on West Main street. At this point there is on the northeast corner Wenzel's hardware store, variously referred to by witnesses, on the northwest corner Farkvam's saloon or hotel, a like point. Next to this on the west is Haase's, a like point. One hundred and thirty feet west from the west boundary of Genesee street is the east boundary of Wright street, which coming in from the north connects at right angles with, but does not cross, West Main street. Thirty feet further west along West Main street is the west boundary of Wright street, and here at the northwest corner of these two streets is a building referred to by the different witnesses as the Commercial Hotel, Thatcher's Hotel, and Tremont House. One hundred and ninety-two feet west of the west line of Wright street brings us to the east line of Juve's house, and a few feet farther west to

a point nearly in front of White's house where the car over-
took and passed the teams and where one of the horses of the
rearmost team jumped onto the rear bolster of the forward
wagon and became entangled in a chain strung between the
bolster stakes.    Witnesses designate the same place or point
by different names, variously estimate time and distances and
relative positions, and this presents some apparent confusion
and much contradiction in the testimony.    But the testi-
mony fairly warrants the conclusion that the driver of the
rearmost team had heard the gong and the gong was rung at
the above-mentioned point of beginning, although there are
some loose statements which might create an impression that
this occurred fifty feet further back or at the other boundary
of Genesee street.    A fair interpretation of the evidence leads
us to believe that the ringing of the gong which disturbed the
rearmost team began at the aforesaid point where the west
boundary of Genesee street intersects West Main street.    The
whole distance covered from the time the motorman began
sounding his gong until the accident was therefore 352 feet,
as near as may be.    With the street car moving at the rate of
eight miles an hour it would require only thirty seconds to
cover this distance, while if we accept the plaintiffs' version,
that the car was moving at greater speed, the whole thing oc-
curred in much less than thirty seconds.    The impression
from the testimony of witnesses, as is generally the case,
would be that much greater time was occupied in the transac-
tions detailed and in the sounding of the gong.    What hap-
pened in this short space of time while the car was traveling
this short distance seems to be that at the said point of be-
ginning the motorman observed in the street ahead of him
going in the same direction and on the north side of the track
two teams, one a short distance ahead of the other, each with
a wagon stripped for hauling lumber and the rear team rather
close to the track.    He sounded his gong, and the rear team
was swerved away from the track toward the curb by its
driver and showed signs of fright.    As the car approached,

the indications of fright increased until the car reached a point in the track when the front part of the car was abreast of the front wheels of the rear wagon, and in this relative position the car and the wagon moved at the same speed and in the same direction and continued for some distance. The motorman did not slack the speed of the car and kept on sounding the gong, the rear team running at a rate of speed to maintain their position relative to the car. In this way the car and the rear team, moving on substantially parallel lines, overtook the forward team, and the rear team was of course brought on a run against the rear wheels and bolster of the forward wagon. This was about in front of White's house and 352 feet from the place of beginning. One of the frightened horses of the rear team being so brought up against the forward wagon leaped onto the wagon, became entangled in the chain mentioned, and the car without slacking its speed passed both teams at this point, and from the combination of circumstances, consisting of the rear team coming up running and jumping onto the wagon and the car passing ringing the bell, the forward team took fright and ran away, causing quite a severe wound to the horse which had leaped on the wagon, the breaking of some parts of the wagon, the harness, and some slight scratches on each of the other three horses.

The foregoing statement is made upon the facts with inferences therefrom which the jury might and probably did by their verdict find to be true. From this we think it is apparent that the only negligence which can be charged against the defendant consists in the motorman unnecessarily continuing to sound the gong after he saw the frightened condition of the rear team of horses or in failing to stop or slack the speed of his car under the same circumstances. The case is very close on this point; but the witness Miller testified:

"The street car was going along at full speed and the motorman was ringing the bell. It got up to the team, and it, the street car, did not lessen its speed when coming up to the team."

The street car did not go ahead of the horses at any time before the horses jumped onto the wagon. The bell began to ring at Wenzel's store. The witness Maas testified that the bell rang up to the time of collision. The witness Germain testified that he drove the rear team, that he heard the bell ringing as the cars came up behind him, the horses began to tramp around a little and sheered off, and the car kept coming and ringing and ringing, and the horses kept getting worse until the car came up to him, when the horses started to run, and the car kept on going and ringing the bell and the horses kept on running, until, with the car slightly behind or alongside of the horses, they overtook the foremost wagon, and one of the horses leaped onto the back part of this wagon.

While a street railway company is not liable for damages caused by a horse taking fright at the sight of a street car in motion, or at the usual noise made by such car in motion, or at the ordinary and proper sounding of a gong or ringing of a bell on such car, yet the motorman or driver is required to keep a proper lookout to avoid collision with persons or vehicles also using the streets, and to do all that an ordinarily prudent and careful person under like circumstances would do to avoid injuring others lawfully using the streets. *Glettler v. Sheboygan L., P. & R. Co.* 130 Wis. 137, 109 N. W. 973. As was said in *Bishop v. Belle City St. R. Co.* 92 Wis. 139, 65 N. W. 733, the mere fact that the horses took fright at an approaching car gives no right of action. In the instant case the plaintiffs by pleading and proof do not, however, rely upon any such ground of liability. What is claimed here and what the evidence tends to support is that the motorman, knowing that plaintiffs' horses were frightened by these usual and ordinary sights and sounds and that there was a liability of injury resulting, continued to approach the frightened team and to run alongside of it or just behind it continuously sounding his gong and without slacking the speed of his car, and without proper regard for the rights of

others lawfully using the street, and in such manner and to such extent as ordinarily prudent persons under like circumstances would not do.

The close point on the evidence is whether, considering the shortness of the time that the ringing continued and the shortness of the distance traversed, the motorman could be held to have been negligent in failing to slack his speed or stop ringing his bell. Some little time for consideration and decision must be allowed him, no doubt, but on the whole there seems to be sufficient evidence to take the case to the jury. On the point that the condition of the team running away was so visible to the motorman that he must have known the cause of their fright, and that he should either have slacked the speed of his car or stopped ringing his bell, or both, before he attempted to approach and run alongside of the runaway horses,. there are many cases affirming this ground of liability. *Oates v. Metropolitan St. R. Co.* 168 Mo. 535, 58 L. R. A. 447; and see cases collected in a note to *Greene v. Louisville R. Co.* 7 Am. & Eng. Ann. Cas. 1126, 1127, 1129; also in note to *Union P. R. Co. v. Cappier,* 66 Kan. 649, 69 L. R. A. 513;. 2 Thompson, Comm. on Neg. §§ 1419, 1420; Clark, Street. Railway Acc. Law, § 114; *Heer v. Warren-Scharf A. P. Co.* 118 Wis. 57, 94 N. W. 789.

5. Appellant next contends that the finding of the jury that the negligence of the motorman was the proximate cause of the injury in question rests upon conjecture only, because no one can say that the injury in question would not have happened if the motorman had desisted from his speed and noise or that it did happen because of such failure to desist. We cannot agree with this refinement. When a probable potential cause is shown which may be identified as the proximate cause and made to answer the legal definition of proximate cause by inferences of fact from direct or circumstantial evidence before the jury, the latter may identify this as a proximate cause, although strict logic might discover other

·causes which the jury might from the same evidence have found to be the proximate cause. In other words, what is the proximate cause of an injury is usually and ordinarily a ·question of fact, and probative inferences from facts in evi-·dence cannot be disposed of by styling them conjectures.

6. The defendant requested the court to instruct the jury ·"that 'ordinary care,' as used herein and wherever used in these instructions and in the verdict, means that care which an ordinarily prudent person ordinarily uses under the same or similar circumstances." Instead the court instructed the jury, " 'ordinary care,' as used in these instructions, means that care which an ordinary prudent person ordinarily ·exercises under the same or similar circumstances." This ·error assigned is based upon the fact that the court used the adjective form "ordinary" to qualify or modify the adjective ·"prudent," instead of the adverbial form "ordinarily." This is a very common error, not only in conversation but in writing, and the writings of some of the great masters of the English language are not without many slips of this kind, a collection of which may be found in text-books on grammar, ·composition, and rhetoric. But such errors are not ground for reversal unless the jury were misled thereby. In the instant case the jury must have understood the word "ordinary," notwithstanding its form, to qualify or modify the next succeeding word. The probability is that they under-·stood the expression in the latter sense. The departure from the correct rule is not so great here as that in *Reffke v. Patten P. Co.* 136 Wis. 535, 117 N. W. 1004. The case in this re-·spect is ruled by *Nass v. Schulz,* 105 Wis. 146, 151, 81 N. W. 133, and *Pumorlo v. Merrill,* 125 Wis. 102, 107, 103 N. W. 464. And see *Anderson v. Chicago B. Co.* 127 Wis. 273, ·281, 106 N. W. 1077, and cases.

7. The action was commenced more than a year after the injury and no notice of the injury was given, and the defend-·ant on the trial asked leave to amend its answer by pleading

this failure. The defendant street railway is not one of the railroad corporations covered by the provisions of sec. 1816b, Stats. (1898), and the action is not one to recover damages for injury to the person mentioned in subd. 5, sec. 4222, Stats. (1898). The application to amend was properly denied.

8. Error is assigned in refusing to instruct the jury that there was no evidence of negligence on the part of the defendant up to the time the car caught up to or reached the rear team. For reasons already given this request was properly refused.

9. Error is assigned because the court refused upon proper request to instruct the jury that the defendant was not negligent because the horses became frightened from noises which are usual and ordinary and incident to the operation of street railway cars, and, applying this, that if the jury found it to be the fact that the motorman sounded the gong for a proper purpose and in the usual manner, this was not negligence, but one of the noises incident to operation. This was a proper charge under the facts of the instant case, but we consider it covered by the charge given in several different forms, particularly the following:

"The defendant or its motorman cannot be deemed negligent in controlling and operating a car merely because horses become frightened by reason of the ordinary, usual noises incident to the moving and operating of cars, or because horses become frightened by sight of the street car, or by necessary sounding of a gong on the car in the ordinary, usual manner, or because horses become frightened at the usual, ordinary speed of the car while it is moving, being operated with reasonable and ordinary care, along its track. . . . Ordinary care does not require that the motorman in charge of a street car shall stop a street car or slow it up merely because a team traveling on a street shies or shows signs of uneasiness. . . . Yet if it is reasonably apparent to the motorman that the team of the traveler on the street has either gotten beyond the control of the driver or is about to get be-

yond his control, so that it is apparent that an injury and damage is probable and reasonably certain if he, the motorman, does not slow up or stop his car or put it under control, then you may find that ordinary care would require the motorman under such circumstances to either slow up or stop the car or place it under control, if the circumstances permit, and that if he fails to do so he may be deemed not to have exercised ordinary care, provided always that you are satisfied an ordinarily prudent person would ordinarily so do under the same or similar circumstances."

Substantially the same rule was given with respect to the continued ringing of the bell. These instructions fairly covered the requests of the defendant on such points; hence there was no error in refusing the requests.

10. Error is assigned in rejecting evidence tending to prove that the injured condition of three of the four horses arose from overwork hauling heavy loads on a hard road during the six days next succeeding the runaway in question. This would seem to be quite a serious mistake had it not been that the same witness was permitted to testify fully on this point on cross-examination without objection. Under these circumstances the error was obviated.

11. After the accident in question the horses concerned appeared to have been engaged in heavy work for the next succeeding six days. Later on three of them upon which there were no serious visible wounds or injuries, and which were not shown to have been thrown down or to have collided with anything, developed, according to the testimony on the part of the plaintiffs, sickness materially affecting their ability to work and their market value, which sickness it is unnecessary to describe here in detail. Error is assigned in permitting witnesses to testify that in their opinion such sickness and disability was caused by the accident in question, but we are unable to consider this assignment of error because no sufficient exception was taken to the admission of this evidence.

12. In addition to evidence tending to show a depreciation

in value of each one of the four horses by reason of the injury in question, the plaintiffs offered evidence of the value of the use of a team per month over and above the cost of keeping, also the cost of feeding each horse per day, also the rate of wages of men employed to take care of the horses, also the value of the services per day to take care of the horses. Objection was taken by defendant on the ground that the cost of feeding horses and keeping is not a proper element of damage. The evidence as to the number of days' time lost was objected to, but the court overruled the objections, and in his instructions to the jury upon this point submitted four items of damage to each horse: (1) The difference between the actual value of the horse at the time of the accident and the value at the time of its recovery from the injuries sustained so far as it had recovered; (2) the loss of the use of each horse being unable by reason of these injuries to work for such period as the evidence showed; (3) the expense incurred by the plaintiffs in attempting to cure each horse of its injuries resulting from the accident; and (4) the actual reasonable and necessary cost of feeding the horse during such time. This portion of the charge relative to damages was excepted to. Considering the evidence before the jury and the instructions which permitted the jury to assess damages consisting of the depreciation in market value of each horse caused by the injury, plus the value of the use of the horse during the time it was incapacitated from work by reason of the injury, plus the cost of doctor's services and medicines and services of others necessarily performed in taking care of such horse, plus the reasonable and necessary cost of feeding the horse during such time, not exceeding all together in any case the actual value of the horse on the day the injuries were received, the damages were not in excess of compensation for the loss. The value of the lost use mentioned in the instructions must be construed with reference to the evidence as offered, and means the value of the use of the horse over and above the cost of its keeping. There was consequently no

duplication of damages.    1 Suth. Dam. (3d ed.) § 57; *Oleson v. Brown,* 41 Wis. 413; *Plunkett v. M., S. S. M. & A. R. Co.* 79 Wis. 222, 48 N. W. 519; *Page v. Sumpter,* 53 Wis. 652, 11 N. W. 60.    But where the full value at the time the horse was injured is recovered, there can be no additional recovery for loss of use of the horse.    *Page v. Sumpter, supra.*

13. The items of costs objected to and brought to the notice of this court by appellant's brief, consisting of drafting requests for instructions and drafting affidavits on motion to modify an order, and drafting notice of examination of adverse party, drafting an order denying a motion to limit the examination of adverse party, attending motion out of term to limit the examination, and attendance on examination of witnesses out of court, were properly allowed.    Sec. 2921, Stats. (1898) : "Necessary entries, pleadings and proceedings in an action according to the practice of the court."    It follows that the judgment should be affirmed.

*By the Court.*—Judgment of the superior court affirmed.